IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

PAMELA E. LEDLEY,

Plaintiff

v. * CIVIL NO.: WDQ-05-1975

ST. AGNES HEALTHCARE, INC.,

Defendants

* * * * * * * * * * * * *

Memorandum Opinion

Pamela E. Ledley, an employee of St. Agnes Healthcare, Inc., ("SAH"), has sued her employer for discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. (the "ADA"). Ledley's remaining ADA claim is limited to her January 22, 2004 meeting with Tom Conley, Vice President of Human Resources at SAH.[1] *Ledley v. St. Agnes Healthcare, Inc.*, No. 05-1975, slip op. at 9 (D. Md. filed Jan. 9, 2006).

Pending is SAH's motion for summary judgment. For the following reasons, the motion will be granted.

---

[1] This Court previously dismissed the other counts of Ledley's complaint, including count two, under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et seq.; count three, under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq.; and count four, an Intentional Infliction of Emotional Distress claim.

I. Background

Ledley has complete loss of hearing in her left ear as a result of a brain tumor. Ledley Dep. at 6-7. She also has graduated hearing loss in her right ear from Meniere's disease. *Id*. As a result of surgery related to her tumor, Plaintiff has difficulty with her balance and suffers from daily headaches, a loss of sensation on the right side of her body, and neuropathy in her arms, hands, legs and feet. *Id*. at 131-32.

Ledley had been a registered nurse in the OB-GYN department, but on May 7, 2003 SAH removed her from direct patient care because SAH believed that her hearing loss presented a risk to the safety of patients. Supp. Mem. at 5.

Subsequently, SAH offered Ledley three jobs over a short period of time, however, Ledley did not last longer than a month in any of them. First, Ledley turned down an offer to work as an instructor in the neo-natal intensive care unit because she did not feel capable. Ledley Dep. at 84-85. Second, Ledley turned down an offer to work as a case manager in the intensive care unit because she felt it was beyond her ability. *Id*. at 85. Third, SAH found Ledley a position as a patient service representative with an affiliated practice where she received the same pay and benefits that SAH had given her as a nurse. Supp. Mem at 6; Ledley Dep. at 126-27. This position did not work out after four weeks because the affiliated practice believed she was

not “catching on.” Ledley Dep. at 126.

SAH posts job openings on a website that Ledley was asked to check. She checked the website once a week beginning in May 2003 for two to three months. Ledley Dep. at 93-94. She stopped checking the site in August 2003 after she fractured her ankle because the injury prevented her from working “even till [sic] the end of the year”. *Id*. at 95. There was no time that she felt able to go back or that there might be jobs for her. *Id*. at 96. She thought there were no jobs that she could do in the OB-GYN clinic. *Id*. at 96-97.

After receiving an insurance company mailing, Ledley scheduled the January 22 meeting with Conley to discuss her status as an employee and her health insurance. *Id*. at 148.

Before this meeting, Ledley had stopped checking the SAH job website. *Id*. at 154. Ledley did not apply for employment after the meeting with Conley because she “couldn’t physically do it.” *Id*. at 157. SAH offered to pay for job rehabilitation through a state agency. Ledley filed suit on July 20, 2005.

The January 9, 2006 decision dismissing counts two, three and four of Ledley’s complaint narrowly defined the scope of the remaining ADA claim. The Court found that her complaint alleged discrete discretionary acts, and the only one that was not time-barred was the January 22 meeting with Conley.

## II. Analysis

SAH argues that it is entitled to summary judgment on the remaining claim because Ledley was unable to perform the essential job functions of any job on January 22, 2004. Ledley counters that SAH failed to offer a reasonable accommodation.

### A. Standard of Review

Under Rule 56(c), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must view the facts and reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The opposing party, however, must produce evidence upon which a reasonable fact finder could rely. *Celotex*, 477 U.S. at 317. The mere existence of a "scintilla" of evidence is insufficient to preclude summary judgment. *Anderson*, 477 U.S. at 252.

B. Disability Discrimination

Ledley challenges her treatment on January 22, 2004 as a violation of the ADA. The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112 (a). To prove a violation of the ADA Ledley must show that: 1) she has a "disability"; 2) she is "qualified" for the job; and 3) SAH's treatment of Ledley constitutes an unlawful "discrimination" based on her disability. *See Tyndal v. National Education Centers*, 31 F.3d 209, 212 (4th Cir. 1994).

Assuming, *arguendo*, that Ledley's hearing maladies[2] are a disability, the Court finds the latter two elements lack evidentiary support.

The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 41 U.S.C. § 12111 (8). The Supreme Court has held this to mean that a "qualified person must be "able to meet all of a program's requirements in spite of his handicap." *Tyndal*, 31 F.3d at 213 (*quoting Southeastern Community College v. Davis*, 442 U.S. 397, 406 (1979)).

---

[2] Ledley's complaint does not allege that her ankle injury is a disability.

To determine if an individual is qualified for a job, a specific job should be at issue. *See Tyndal*, 31 F.3d at 213 (assuming that a specific position was at issue when deciding whether the individual was "qualified"). Here, Ledley had neither asked about a specific job in her meeting with Conley, nor applied for one. At the time of the meeting, Ledley held no specific position--she was on discretionary leave--and any argument about her ability to perform job functions during the time-barred period is irrelevant.

Even if Ledley had identified a position, her claim fails because she was not qualified for any job in January 2002. To determine whether Ledley is qualified, the Court must decide: 1) whether she could perform the essential function of the job; and 2) if not, whether any reasonable accommodation by SAH would allow her to perform those functions. *Tyndal*, 31 F.3d at 213. Importantly, Ledley "bears the burden of demonstrating that she could perform the essential functions of her job with reasonable accommodation." *Id*.

Ledley, in fact, has not established that she can perform any job. Clearly she had not been pursuing positions at SAH because she had not checked the job postings website leading up to her January 22 meeting. She stated that she could not work before the meeting because she could not physically work "even till [sic] the end of [2003]," nor after the meeting. Ledley

Dep. at 95, 157. She stated further that there was no time that she felt able to go back or that there might be jobs that she could perform. *Id*. at 96. Her belief at the meeting that SAH could find her a job does not sufficiently counter her admissions. Ledley Dep. at 154. No reasonable jury could find her capable of performing essential job functions despite her hearing loss.

In addition, nothing in the record indicates that Conley discriminated against her in violation of the ADA. Ledley stated that she scheduled the meeting with Conley after receiving a notice about health insurance so that she could inquire about her employment status and whether she had health insurance. She did not schedule the meeting to discuss beginning work again, did not identify any particular job and did not ask about returning. Conley, however, pointed her to the job website and offered to pay for rehabilitation. Ledley could not find an available job on the website the two times she checked after the meeting. *Id*. at 154.

In failure to accommodate cases the plaintiff must also show that the employer refused to make an accommodation. *Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2001). Ledley, however, did not seek an accommodation, nor could she have in the absence of an identifiable job since the reasonableness of an accommodation requires a factual analysis. *Champ v. Baltimore*

*County*, 884 F.Supp 991, 999 (D. Md. 1995). In fact, the burden is on the plaintiff to produce “sufficient evidence to establish a facial showing that accommodation is possible.” *Id*. Evidence does not exist to show that Ledley requested a specific accommodation on January 22 nor that an accommodation would have allowed her to return to SAH.

The refusal to accommodate analysis includes the requirement that the employer and the employee engage in an interactive process to find a reasonable accommodation. *Bryant v. Better Business Bureau of Greater Md., Inc.*, 923 F.Supp 720, 737 (D. Md. 1996); 29 C.F.R. 1630.2(o)(3). SAH did not violate the ADA on January 22 because Ledley could not work at all and identified no particular job for which an accommodation was sought--she even admitted that no positions were available. *See* Ledley Dep. at 154, 156. In fact, when SAH first became concerned with her ability to perform as a nurse, SAH offered Ledley three jobs, two of which she refused and the third of which she did not perform to expectation after a month, as an accommodation. In addition, approximately four months later SAH offered to pay for rehabilitation so that she could begin working again. Accordingly, no reasonable jury could find that SAH refused to make accommodation or engage in an interactive process with Ledley.

## III. Conclusion

For the reasons discussed above, SAH’s motion for summary judgment will be granted.

October 17, 2006
Date

/s/
William D. Quarles, Jr.
United States District Judge